# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

|  |  |  |
|---|---|---|
| **IN RE GARY M. BOWMAN,** | ) ) ) ) ) ) ) ) ) ) | Case No. 7:08CV00339 |
| Appellant. | | **OPINION** |
| | | By: James P. Jones<br>Chief United States District Judge |

Appeal from the United States Bankruptcy Court for the Western District of Virginia, Misc. No. 07-00701.

*Gary M. Bowman, Roanoke, Virginia, Appellant; John Robert Byrnes, Office of the United States Trustee, Roanoke, Virginia, for the United States Trustee.*

This is an appeal from an order of the bankruptcy court imposing sanctions upon the appellant, an attorney practicing in that court. The attorney admitted that he had violated Bankruptcy Rule 9011 in two cases, and requested essentially the same sanctions the bankruptcy court ultimately imposed. Nevertheless, he appeals the sanctions order. For the reasons that follow, I will affirm.

I

The appellant, Gary M. Bowman, is an attorney who regularly practices in the United States Bankruptcy Court for the Western District of Virginia. On August 29,

2007, a judge of the bankruptcy court, Judge William F. Stone, Jr., entered a Show Cause Order, reciting that it appeared that Bowman had failed to comply with Bankruptcy Rule 9011 in complaints filed by Bowman in two adversary proceedings in that court and had engaged in similar conduct on prior occasions.[1] The 16-page order detailed the specific allegations of the offending conduct attributed to Bowman and directed him to file a written response within 30 days. The order also advised

---

[1] Rule 9011, taken from Federal Rule of Civil Procedure 11, provides in relevant part that

>By presenting to the court . . . a pleading . . . an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
>(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increases in the cost of litigation;
>
>(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
>(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
>(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).

Bowman that Judge Stone expected to schedule a hearing on the motion after receipt of the response.

The two adversary proceedings that were the subject of the Show Cause Order were *Perkins v. Wachovia Bank, N.A.*, and *Bousman v. Wachovia Bank, N.A.*

In *Perkins*, a Chapter 13 case, Bowman filed a plan on behalf of his debtor client that provided for monthly montage payment for 60 months by the debtor to a bank. The plan further provided that to the extent the bank's mortgage was not fully satisfied by the payments during the plan period, the bank would retain its lien upon the property after discharge of the debtor. The specified monthly payments clearly would not have satisfied the mortgage debt. Later in the case, Bowman filed an adversary proceeding against the bank claiming that all of the payments had been made under the plan and that therefore the mortgage should be released, not mentioning the provision of the plan allowing the bank to keep its lien on the property after discharge.

When questioned about this discrepancy by Judge Stone at a hearing, Bowman explained that the complaint was from a form on his computer that he had routinely filed in other cases and he had "never received any sort of questioning or pushback or any kind of scrutiny from the other judges, and so I followed the same practice."

(Show Cause Order 10.) A few days later, Bowman filed a notice of dismissal of the adversary proceeding.

In *Bousman*, Bowman filed a motion to reopen a bankruptcy case in order to allow his debtor clients to bring a motion to avoid a judgment lien obtained by a bank. In his motion, Bowman alleged that the judgment lien had been obtained while "they [his clients] were debtors in the case." (*Id*. 13.) The motion was granted and the case reopened. Bowman then filed an adversary proceeding in which it was revealed that the judgment had not been obtained during the closed case referred to in the motion, but before an earlier case by the debtors that had been dismissed. Judge Stone brought the false statement made in the motion to Bowman's attention, and Bowman later voluntarily dismissed the adversary proceeding.

In his Show Cause Order, Judge Stone also referred to prior cases in which it appeared that Bowman had engaged in sanctionable conduct. Those cases include the *Collins* case in 1996, in which Chief Bankruptcy Judge Ross W. Krumm issued a show cause order against Bowman for making false statements in a pleading; the *Hicks* case in 1999, in which Judge Stone advised Bowman that he was considering issuing a show cause order because of his handling of the case, but decided against it after receiving Bowman's explanation; the *Jacques* case in 2000, in which Judge Stone issued a show cause order against Bowman over the allegation of the debtor's

place of residency. The order was dismissed after Bowman appeared before the court and "expressed 'his awareness of the need to assure that the pleadings filed under his signature are appropriately grounded in fact and with a reasonable legal basis therefor'" (*id.* 5); and the *Greenway* case in 2000 in which Judge Stone criticized Bowman in court for his handling of a Chapter 13 case.[2]

Bowman then filed a Motion to Recuse Judge Stone, as well as a separate Response to the Show Cause Order.

In his Response, Bowman admitted that he had violated Rule 9011 in the *Perkins* and *Bousman* cases. In his "Introductory Statement," Bowman declared:

> This Court has properly identified incorrect statements made by me in the cases of Michael and Sandra Bousman, Chapter 13 Case No. 99-01086, and Kim Perkins, Chapter 13 Case No. 01-4818. This response is not intended to deny the errors or to minimize their significance. The purpose of this pleading is to establish the context of the incorrect statements and to demonstrate that the inaccurate

---

[2] Judge Stone felt that the Chapter 13 plan had not been filed in good faith and admonished Bowman in court as follows:

THE COURT: Well, what I'm concerned about is you as an officer of this Court noticing a plan to creditors that you well know what is required as far as the debtor having signed the plan in the first place and then noticing the plan that on its face would not work.

MR. BOWMAN: Yes, sir.

THE COURT: I'm not sure what you perceive your responsibilities as an officer of the Court to be, Mr. Bowman.

(*Id.* 7.)

> statements in the Bousman and Perkins cases were not part of a pattern of prior similar behavior.

(Response, Oct. 31, 2007, DE 1-9, at 1.)[3] In the argument portion of his Response, Bowman asserted that while he had violated Rule 9011 by "making statements that were not supported by the evidence and claims for relief which were not legally justified given the current posture of the cases at the time" (*id.* at 26), he should not be barred from further practice before the bankruptcy court "because the pleadings were not filed for an improper purpose" (*id.* at 31). In closing, Bowman urged that the "appropriate sanction in this case is an order finding that Rule 9011 was violated, directing [Bowman] to conform to this Court's expectations, and imposing a period of probation." (*Id.* at 45.)

On December 20, 2007, Judge Stone issued a Memorandum Opinion and an Order denying the Motion to Recuse, but advising that he would invite the other two judges of the bankruptcy court to participate in the matter.

On January 2, 2008, Judge Stone wrote to Bowman, who was then serving as an active reserve officer in the Army, in order to arrange a suitable date for a hearing. Judge Stone advised Bowman as follows:

---

[3] The reference is to the record on appeal, contained at docket entry ("DE") number 1 of the case docket in this court.

> Please advise of your wishes concerning the scheduling of any hearing upon the show cause order. I have no objection to deferring a hearing until after completion of your current tour of duty, subject to appropriate provisions governing filing any new cases or initiating any contested matters or adversary proceedings in any cases already filed until after the show cause order can be heard and determined.

(Letter, Jan. 2, 2008, DE 1-15, at 126.) Bowman responded to Judge Stone by letter of January 22, 2008:

> This letter is in response to the Court's request that I state whether I desire that a hearing be held on the show cause matter.
>
> It is my understanding, based on the Court's previous letters, that the three judges of the Court will consider my proposed resolution of the show cause matter, and that no hearing will be held. That procedure is agreeable to me.
>
> If the Court desires to hold a hearing, I will of course appear at such hearing as required by the Court. I am currently overseas, but I am scheduled to return to the United States in late May.

(Bowman Letter, Jan. 22, 2008, DE 1-15, at 127.)

On March 31, 2008, the bankruptcy court issued a Memorandum Opinion and Order, signed by all three of the bankruptcy judges of that court, admonishing Bowman, and directing that he complete a professional responsibility course as approved by the chief judge of the bankruptcy court, and that he file a certification with the court that he had reviewed certain rules of court and of professional conduct and that he will "endeavor to insure" that his future conduct will be consistent with

such rules. In addition, the court advised that any new material violation of the rules would be deemed "prima facie cause for the suspension or termination of [Bowman's] right to practice law in this Court as a member of its bar." (Order 3, Mar. 31, 2008, DE 1-16 at 3.)[4]

This appeal followed.[5] The subject-matter jurisdiction of this court is based on 28 U.S.C.A. § 158(a)(1) (West 2006).

In his brief and reply brief filed in this court,[6] Bowman asked that the sanctions imposed upon him be set aside for the following reasons:

1. That Judge Stone should have recused himself, because he had a personal bias against Bowman and personal knowledge of the disputed facts;

---

[4] Bowman has apparently complied with the bankruptcy court's directions to complete a professional responsibility course and file a certification, but it is agreed that the matter is not moot, because of the court's admonition and warning about future sanctions.

[5] Because of his military service, Bowman has obtained three stays of the appeal from this court, the last until September 15, 2009.

[6] Bowman's initial brief of 74 pages and his reply brief of 43 pages exceeded the page limitations of Rule 8010(c) (50 pages for principal briefs and 25 pages for reply briefs). In his brief, the United States Trustee pointed out that Bowman's initial brief exceeded the page limitation, but Bowman then proceeded without leave of court to exceed the page limitation for his reply brief. Under the circumstances, I will not strike Bowman's briefs, although I note the fact that an attorney appealing his violation of a rule, has violated another rule on the appeal.

2. That the adversary proceedings in which the accused conduct occurred had been concluded, and thus the bankruptcy court had no power to initiate the disciplinary proceeding against him based on Rule 9011;

3. That Chief Judge Krumm, one of the bankruptcy judges who participated in the disciplinary proceeding, had a conflict of interest and should not have participated;

4. That the bankruptcy court erred in its characterization of his conduct; and

5. That the bankruptcy court erred in the nature of its sanction.

Bowman also filed in this court a motion entitled "Motion to Bar U.S. Trustee as Party to Appeal," contending that because the United States Trustee did not intervene in the bankruptcy court, he did not have standing to participate in this appeal.

I will consider these issues seriatim.

A

In his motion seeking a recusal of Judge Stone filed below, Bowman argued that Judge Stone had a personal bias or prejudice concerning him, as well as a

personal knowledge of disputed evidentiary facts, and was thus disqualified under 28 U.S.C.A. § 455(b)(1) (West 2006).[7]

As to the personal knowledge aspect of his motion, Bowman based that claim on a letter that Judge Stone wrote to Bowman on August 28, 2007, the day before the Show Cause Order was entered. The letter was one of a series between Bowman and Judge Stone, initiated by Bowman on July 26, 2007, when he learned that Judge Stone had requested several closed court files from record storage. Apparently realizing that his conduct was being scrutinized, Bowman wrote and advised Judge Stone of his anticipated scheduling conflicts, including his upcoming military service, and stated, "I am trying to wrap up my affairs and I am concerned that you may be contemplating an action which I cannot plan around or will not be here to defend." (Bowman Letter, July 26, 2007, DE 1-15, at p. 121.) He ended his letter by stating, "I understand, more than ever, your concern about me filing pleadings which you consider objectionable and I will try my best to not file any pleadings which you may consider objectionable if I resume practicing law before you." (*id.*) Judge Stone acknowledged Bowman's letter and then wrote him again, asking him how long he

---

[7] "Any justice, judge, or magistrate judge of the United States shall disqualify himself . . . . where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C.A. §§ 455(a), (b)(1). The statute applies to bankruptcy judges. *See* Fed. R. Bankr. P. 5004(a).

- 10 -

expected to be in military service and if he intended to continue handling matters in the bankruptcy court.

Bowman responded on August 20, stating that he was scheduled to be on active duty with the Army for 16 months beginning in September and that he did not anticipate handling bankruptcy cases during that period. Judge Stone then wrote Bowman on August 28, as follows:

> Thank you for your most recent letter dated August 20. While I appreciate the fact of your military service and would much prefer not to burden you with a show cause order while you are trying to get ready to report, I feel that as a practical matter I need either to enter an order now or not issue it at all. In the past your active military service has not prevented you from continuing to practice in this court, as evidenced by the very Bousman and Perkins proceedings furnishing the immediate basis for the show cause, so I assume that thirty days will provide an adequate time to respond to it. While in the past I have attempted to alter your approach to the practice of law in this court by means which have not caused you any trouble other than responding to my letters or orders, such as accepting your acknowledgment in open court that you did recognize your responsibilities as officer of this court, your recent comments make clear that you fundamentally disagree with the course correction I have attempted to effect and that you seem to believe that the problem is with my attitude and not your own approach to representing your clients. For that reason I have decided, with regret, that to commence this process at this time with the issuance of a show cause order now is what I need to do. The actual hearing, if any, on the show cause will be determined after receiving your response and in a manner compatible with your active duty requirements. I assure you that you will have a full opportunity to make a full record in the matter so that an appropriate review can be made of any action I ultimately decide to take, if any. I anticipate that the show cause will be issued tomorrow

and I assume you will receive an electronic copy of same as well as one by mail.

(Stone Letter, Aug. 28, 2007, DE 1-15, at 125.)

Bowman disputes that Judge Stone had attempted a "course correction" in the past and argues that Judge Stone's perceived knowledge of these circumstances as shown in this letter constituted cause for recusal.

As to the personal bias issue, Bowman contends that in 1997, before Judge Stone became a judge, he and Bowman represented opposing sides in a bankruptcy case and then-attorney Stone argued to the court that certain of Bowman's arguments were "entirely unmeritorious." (Appellant's Br. 22.) Bowman asserts that, "I believe that Judge Stone formed the opinion at that time that I do not take my responsibilities as an officer of the Court seriously." (*Id.*)

Bowman also relies on the fact that later, after Judge Stone became a judge in 1999, he issued show cause orders against Bowman in the *Hicks* and *Jacques* cases, mentioned above, as well as in a third case, *Hamlett*.[8]

---

[8] In the *Hamlett* case, Judge Stone, as the result of a pleading filed by Bowman, granted the trustee in bankruptcy leave to file a motion for sanctions under Rule 9011 against both Bowman and his client "if [the trustee] believes such a Motion to be justified under all of the facts and circumstances," which she did. (App. Appellant's Br. 137.) Judge Stone also directed Bowman to show cause why non-monetary sanctions should not be imposed upon him. After a later hearing, Judge Stone dismissed the trustee's motion and the show cause order. Bowman did not mention the *Hamlett* case in his motion seeking Judge Stone's recusal, nor was it mentioned in the bankruptcy court's orders below.

In spite of Bowman's arguments, no error was committed by Judge Stone in refusing to recuse himself. There was no valid indication of any extrajudicial source of bias or prejudice, nor did Judge Stone's prior criticism of Bowman's conduct amount to cause for recusal. *See Liteky v. United States*, 510 U.S. 540, 554-56 (1994).

Of course, a judge is not required to recuse simply because he has initiated sanctions proceedings sua sponte. As the Sixth Circuit explained:

> No court has ruled that a judge who quite properly raises the issue of sanctions is disqualified from deciding the issue; such a rule would produce the unacceptable result of removing from the judicial process the one person best able to decide whether a party's conduct was sanctionable, and [the] plaintiffs' argument is not supported by the language or intent of Rule 11.

*Lemaster v. United States*, 891 F.2d 115, 121 (6th Cir. 1989).

Moreover, Judge Stone's knowledge of Bowman's behavior in past cases was appropriate information for him to consider in the context of a disciplinary proceeding, and disqualification is not required by reason of § 455(b)(1).

B

Bowman claims that the bankruptcy court had no power to consider his violations of Rule 9011, since the adversary proceedings in which he committed those violations had been concluded. I find his argument to be without merit.

Rule 9011 provides that on its own initiative, the court may direct an attorney to show cause why he has not violated its provisions. Fed. R. Bankr. P. 9011(c)(1)(B). The safe harbor provision of Rule 9011, which permits a challenged pleading to be withdrawn or appropriately corrected, applies only where a motion for sanctions is filed by a party. *See* Fed. R. Bankr. P. 9011(c)(1)(A). In *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), decided before the safe harbor provision was added to Rule 11, the Supreme Court held that a district court had jurisdiction to enforce the rule even after a plaintiff had filed a notice of dismissal. *Id.* at 395. The same principle applies here.

In any event, the bankruptcy court also based its order on its inherent authority to discipline attorneys admitted to practice before it. *See McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1169-71 (4th Cir. 1997).

C

Wachovia Bank was a party to the *Perkins* and *Bousman* cases and because Chief Judge Krumm has recused himself previously in cases involving Wachovia Bank, Bowman argues that he should not have participated in this disciplinary proceeding. The issue was not raised below and is thus defaulted.[9] In any event, the

---

[9] Bowman claims that this issue is not defaulted because he did not know Judge Krumm would participate until the opinion and order resolving the Show Cause Order was entered. Of course, Judge Stone, in his opinion denying his recusal, stated that he intended

- 14 -

cases in which Wachovia Bank was a party are closed. The bank did not move for sanctions against Bowman under Rule 9011 and accordingly did not have even a theoretical right to obtain monetary sanctions.[10] It was not a party and had no financial or other interest in the subject matter of the proceeding. Accordingly, Judge Krumm was not disqualified.

---

to invite the other judges of the bankruptcy court to participate "so that any hearing upon such Show Cause Order and any proposed substantive disposition thereof will be jointly heard and collectively determined by the three current judges of this court." (Mem. Op. 1, Dec. 20, 2007, DE 1-13 at 1.) Bowman recognized this in his letter to Judge Stone of January 20, 2008, where he stated, "It is my understanding, based on the Court's previous letters, that the three judges of the Court will consider my proposed resolution of the show cause matter, and that no hearing will be held. That procedure is agreeable to me." (Bowman Letter, Jan. 22, 2008, DE 1-15, at 127.)

Bowman argues that he understood only that <u>if</u> his proposed resolution of the matter was accepted would the three judges participate, but not if the court went beyond his proposal. In other words, he was satisfied for Judge Krumm to violate the law by participating in a matter in which he had a conflict of interest, so long as Judge Krumm agreed with Bowman's proposed resolution. Moreover, Bowman ascribes a sinister motive to the bankruptcy judges in this regard — the initiation of a separate proceeding against Bowman provided Judge Krumm "cover" in order for him to participate in a case in which he had a conflict (Appellant's Reply Br. 33) and allowed the judges "to attempt to formally circumvent Judge Krumm's conflict of interest" (Appellant's Br. 40).

Bowman's arguments are meritless.

[10] Monetary sanctions may not be awarded on the court's initiative where the court issues its order to show cause after the case is concluded. *See* Fed. R. Bankr. P. 9011(c)(2)(B).

D

Bowman argues that the bankruptcy court erred in describing his conduct. While his arguments differ somewhat among his initial brief, his reply brief, and his oral argument, it appears that his claims on the merits are that the bankruptcy court erred (1) in considering prior incidents unrelated to *Perkins* or *Bousman* as a pattern of misconduct, and (2) in describing his conduct in *Perkins* and *Bousman* as intending to mislead the court or the opposing party. As a remedy, he requests this court to strike or vacate offending portions of the bankruptcy court's opinion.

Factual findings of the bankruptcy court may not be set aside unless clearly erroneous. Fed. R. Bankr. P. 8013. On appeal of a sanctions order, all issues, including whether the rule was violated and the choice of sanction, are reviewed under an abuse-of-discretion standard. *Hartmax*, 496 U.S. at 399-400. I may reverse only if I form "'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)).

It was appropriate for the bankruptcy court to consider Bowman's prior conduct in the *Hicks*, *Jacques*, and *Greenway* cases in determining the sanction to be imposed. While Bowman denies misconduct in those cases, I do not find that the

bankruptcy court was clearly erroneous or abused its discretion in its characterization or consideration of those incidents.

The "improper motive" issue arises in Bowman's mind because in its opinion below, the bankruptcy court quoted language from *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457-58 (4th Cir. 1993), which described an attorney's duty to comply with the rules even when in conflict with the desires of a client. The bankruptcy court went on to state its view that it is an "improper purpose" within the meaning of Rule 9011(b)(1) to file an inaccurate pleading which may obtain an advantage for the client.

Bowman complains that this statement implies "that I committed similar misconduct and violated the principle of *Shaffer Equipment Co.* because I filed the pleadings in the Perkins and Bousman cases in an attempt to persuade Wachovia Bank that the pleadings had merit, duping Wachovia into a settlement or persuading it to default." (Appellant's Br. 71.)

Perhaps the bankruptcy court's reference here was because in the *Perkins* case, when Judge Stone inquired about the discrepancy between the provisions of the debtor's plan and the adversary complaint, Bowman replied, "[T]he first answer I was going to say was what the client wants," an answer quoted in the bankruptcy court's opinion. (Mem. Op. 12, Dec. 20, 2007, DE 1-13 at 12.)

In any event, the bankruptcy court's advice was clearly within its discretion, which I will not disturb.[11]

E

Bowman argues that the bankruptcy court erred in advising in its order that "any new material violation of the aforesaid Rules so determined shall be deemed prima facie cause for the suspension or termination of [Bowman's] right to practice law in this Court as a member of its bar." (Order 3, Mar. 31, 2008, DE 1-16 at 3.) Of course, Bowman had proposed to the court that he be placed on probation, but he contends that this provision of the order impermissibly changed the burden of proof in any future Rule 9011 proceeding against him.

This argument was not raised below or in the statement of issues of Bowman's initial brief, as required by Rule 8010(a)(1)(C), but only in his reply brief. Accordingly, it is defaulted. *See Lane v. Sullivan (In re Lane)*, 991 F.2d 105, 107 (4th Cir. 1993) (holding that claim not raised before bankruptcy court could not be raised on appeal). In any event, the bankruptcy court clearly did not change the

---

[11] At oral argument in this appeal, Bowman contended that the "gist" or "gravamen" of his appeal was that the bankruptcy court erred because it issued its sanctions order based on Rule 9011(b)(1), rather than Rule 9011(b)(2) and (3), as charged in the Show Cause Order. Rule 9011(b)(1) proscribes pleadings presented for "any improper purpose." The Show Cause Order fully advised Bowman of the specifics of the conduct of which he was charged and he has no grounds to complain of lack of notice.

proper burden for determining in the future whether Bowman violated Rule 9011. The issue is only one of sanction, and it is proper for the court to consider prior sanctionable conduct in making that determination. No attorney ought to expect that his or her past conduct will not weigh heavily on the court in deciding a current violation.

F

Finally, Bowman argues that the United States Trustee had no authority to appear in this appeal, since he had not moved to intervene in the bankruptcy court and thus was not a party below.

The United States Trustee has broad duties with respect to bankruptcy cases. *See* 28 U.S.C.A. § 586 (West 2006 & Supp. 2010). While the bankruptcy rules do not specifically permit an amicus curiae appearance on appeal, there is no rule prohibiting it and such an appearance is within this court's discretion. *See* 4 Am. Jur. 2d *Amicus Curiae* § 2 (2007). Since without the appearance of the United States Trustee, there would be no opposing party in this appeal, I have determined in my discretion to permit it.

III

For the reasons stated, the order of the bankruptcy court appealed from will be affirmed. A separate judgment will be entered herewith.

    DATED: June 21, 2010

    /s/ JAMES P. JONES
    Chief United States District Judge